## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:14-cv-12813 ) |
| Deval L. Patrick, Governor of the Commonwealth of Massachusetts; Massachusetts Department of Correction; Luis S. Spencer, Commissioner of the Massachusetts Department of Correction; and Lynn Bissonnette, Superintendent of the Massachusetts Correctional Institution at Framingham, | ) ) ) ) ) ) ) **Oral Argument Requested** |
| Defendants. | ) ) ) |

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

I.      Section 35....................................................................................................................2

II.     The Imprisonment of Civilly Committed Women at MCI-Framingham............................2

III.    Plaintiff Jane Doe........................................................................................................4

PROPOSED CLASS DEFINITION ........................................................................................5

ARGUMENT ........................................................................................................................5

I.      The Proposed Class Satisfies the Four Prerequisites of Rule 23(a)...................................5

   A.      Numerosity..........................................................................................................6

      1.      The Number of Class Members Renders Joinder Impracticable ..................................7

      2.      Other Factors Also Render Joinder Impracticable......................................................10

   B.      Commonality......................................................................................................11

   C.      Typicality ...........................................................................................................12

   D.      Adequacy ...........................................................................................................13

II.     The Proposed Class Meets the Requirements of Rule 23(b)(2).......................................15

III.    In the Alternative, the Court Should Order Class Discovery...........................................17

CONCLUSION......................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

FEDERAL CASES

*Arkansas Ed. Ass'n v. Bd of Ed.*,
  446 F.2d 763 (8th Cir. 1971) ...................................................................................6

*Avery v. Heckler*,
  584 F. Supp. 312 (D. Mass. 1984) ...........................................................................7

*Banner v. Smolenski*,
  315 F. Supp. 1076 (D. Mass. 1970) ........................................................................11

*Clarkson v. Coughlin*,
  145 F.R.D. 339 (S.D.N.Y. 1993) .........................................................................6, 10

*Connor B., ex rel. Vigurs v. Patrick*,
  278 F.R.D. 30 (D. Mass. 2011).................................................................... passim

*Davy v. Sullivan*,
  354 F. Supp. 1320 (D. Ala. 1973)............................................................................6

*DeRosa v. Mass Bay Commuter Rail*,
  694 F. Supp. 2d 87 (D. Mass. 2010) ........................................................................6

*Garcia-Rubiera v. Calderon*,
  570 F.3d 443 (1st Cir. 2009)....................................................................................7

*Gen. Tel. Co. of the Nw. v. EEOC*,
  446 U.S. 318 (1980).................................................................................6, 12, 13

*George v. Nat'l Water Main Cleaning Co.*,
  286 F.R.D. 168 (D. Mass. 2012)..............................................................................6

*Glass Dimensions, Inc. v. State St. Bank & Trust Co.*,
  285 F.R.D. 169 (D. Mass. 2012)............................................................................12

*Gordon v. Johnson*,
  No. 13-cv-30146-MAP, 2014 WL 2120002 (D. Mass. May 21, 2014)........................ passim

*Green v. Johnson*,
  513 F. Supp. 965 (D. Mass 1981) ......................................................................7, 10

*Guckenberger v. Boston University*,
  957 F. Supp. 306 (D. Mass. 1997) .........................................................................16

*Hawker v. Consovoy*,
  198 F.R.D. 619 (D.N.J. 2001)................................................................................10

i

*In re Citigroup, Inc. Capital Accumulation Plan Litig.*,
   No. 00cv11912-NG, 2010 WL 9067986 (D. Mass. Jan. 6, 2010) ............................................6

*In re Nexium(esomeprazole) Antitrust Litig.*,
   296 F.R.D. 47 (D. Mass. 2013)...................................................................................................6

*In re Prograf Antitrust Litig.*,
   No. 1:11-cv-10344-RWZ, 2013 WL 2395083 (D. Mass. Apr. 23, 2013) ................................6

*J.D. v. Nagin*,
   255 F.R.D. 406 (E.D. La. 2009)...............................................................................................10

*Jackson v. Danberg*,
   240 F.R.D. 145 (D. Del. 2007) .............................................................................................6, 10

*Karsjens v. Jesson¸*
   283 F.R.D. 514 (D. Minn. 2012)..............................................................................................16

*Kenneth R. ex rel Tri-County Cap, Inc./GS v. Hassan*,
   293 F.R.D. 254 (D.N.H. 2013) ..........................................................................................12, 16

*Mass Ass'n of Older Americans v. Spirito*,
   92 F.R.D. 129 (D. Mass. 1981).................................................................................................7

*McCuin v. Sec'y of Health and Human Servs.*,
   817 F.2d 161 (1st Cir. 1987) .....................................................................................................7

*Rakes v. Coleman*,
   318 F. Supp. 181 (E.D. Va. 1970) ...........................................................................................16

*Rancourt v. Concannon*,
   207 F.R.D. 14 (D. Me. 2002)....................................................................................................7

*Reid v. Donelan*,
   297 F.R.D. 185 (D. Mass. 2014)....................................................................................... passim

*Rolland v. Patrick*,
   Civ. A. No. 9830208-KPN, 2008 WL 4104488 (D. Mass. Aug. 19, 2008)............................15

*Rosie D. v. Patrick*,
   593 F. Supp. 2d 325 (D. Mass. 2009) .................................................................................14, 15

*San Antonio Hispanic Police Officer Or v. San Antonio*,
   188 F.R.D. 433 (W.D. Tex 1999) ..............................................................................................9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)...................................................................................................................5

*Smith v. Ashe*,
    106 F.R.D. 353 (D. Mass. 1985)........................................................................16

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .............................................................................11, 15

*Yaffe v. Powers*,
    454 F.2d 1362 (1st Cir. 1972).................................................................15, 16

**STATE CASES**

*Haverty v. Commissioner of Correction*,
    440 Mass. 1 (2003) .............................................................................................14

*Souza v. Sheriff of Bristol County*,
    455 Mass. 573 (2010) .........................................................................................14

**FEDERAL STATUTES**

Americans with Disabilities Act. 42 U.S.C. § 12131(2) and § 12102(1)(A).........................1, 2, 11

**STATE STATUTES**

M.G.L. ch. 93, § 103 ..............................................................................................11

M.G.L. ch. 123, § 35 ..................................................................................... passim

**RULES**

Fed. R. Civ. P. 23(a) ........................................................................................ passim

Fed. R. Civ. P. 23(b) .....................................................................1, 5, 15, 16, 17

Fed. R. Civ. P. 23(g) .................................................................................14, 17

Rules, 2003 Amendments , subd. (g)........................................................................14

**CONSTITUTIONAL PROVISIONS**

Massachusetts Constitution.................................................................................1, 11

United States Constitution .................................................................................1, 11

## INTRODUCTION

Plaintiff Jane Doe seeks certification of a class of all women who are or will be imprisoned at the Massachusetts Correctional Institution at Framingham ("MCI-Framingham") solely as a result of their civil commitment, under Chapter 123, Section 35, of the Massachusetts General Laws ("Section 35"). These women are not committed as a result of criminal convictions or even criminal charges. They are committed because of their addition to drugs or alcohol.

The imprisonment of women civilly committed to MCI-Framingham is uniformly incompatible with the statutory purpose of inpatient treatment, and a substantial departure from any professional judgment about helping people recover from the disease of addiction. As a result, this imprisonment violates Ms. Doe's and putative class members' substantive due process rights under the Fourteenth Amendment to the United States Constitution, Articles 1, 10, and 12 of the Massachusetts Declaration of Rights, and Part II, Chapter 1, Section 1, Article IV of the Massachusetts Constitution. It also discriminates based on disability, in violation of Title II of the Americans with Disabilities Act ("ADA") and Massachusetts law.

To remedy these violations, Ms. Doe seeks a permanent injunction prohibiting Defendants from incarcerating any woman in MCI-Framingham based solely on a Section 35 commitment. She also seeks a declaration that any such incarceration is unlawful. Because the central issue presented by Ms. Doe's imprisonment is common to all putative class members, and cannot practicably be addressed through piecemeal litigation, this Court should certify a class, under Federal Rules of Civil Procedure 23(a) and 23(b)(2), of all women who are now or will be imprisoned at MCI-Framingham based solely on a Section 35 commitment.

**BACKGROUND**

I.      **Section 35**

Section 35's statutory purpose is the care and treatment of alcohol and substance abusers. M.G.L. ch. 123, § 35. Individuals addicted to drugs and alcohol suffer from a disability as defined by the ADA, *see* 42 U.S.C. § 12131(2) and § 12102(1)(A), and Massachusetts law. To achieve its goal, Section 35 authorizes civil commitment for up to 90 days of persons addicted to alcohol or controlled substances if, after a hearing and an examination by a qualified physician or psychologist, a judge finds that "there is a likelihood of serious harm as a result of the person's alcoholism or substance abuse." M.G.L. ch. 123, § 35.[1] Section 35 directs that these civil commitments shall receive "inpatient care in public or private facilities approved by the department of public health under Chapter 111B for the care and treatment of alcoholism or substance abuse." *Id.*

If these "suitable facilities" are unavailable, however, the statute provides that women may be civilly committed to MCI-Framingham. *Id.* MCI-Framingham is a medium security prison that has not been approved by the Department of Public Health for the care and treatment of alcoholism or substance abuse. Yet hundreds of women have been and continue to be incarcerated there solely as a result of their civil commitment under Section 35.

II.     **The Imprisonment of Civilly Committed Women at MCI-Framingham**

Although civilly committed women are not placed at MCI-Framingham as a consequence of a criminal charge or conviction, they are treated like prisoners and routinely subjected to the standard prison policies and procedures.

---

[1] Section 35 defines an "alcoholic" or "substance abuser" as someone who "chronically or habitually consumes," "ingests," or "inhales" alcoholic beverages, controlled substances, or toxic vapors "to the extent that (1) such use substantially injures his health or substantially interferes with his social or economic functioning, or (2) he has lost the power of self-control" over those substances. *Id.*

When the women enter MCI-Framingham, they are subject to the same intake procedures as convicted prisoners and detainees pursuant to prison policy. This includes sitting on a body orifice security scanner ("BOSS") chair to detect metal objects concealed in body cavities, a strip search, and a visual search of oral, anal, and vaginal cavities. Their personal property and clothing is taken from them, and they are forced to wear prison uniforms. *See* Declaration of Jane Doe ("Doe Decl.") ¶¶ 4-6, 15, Exhibit A (submitted for filing under seal).

While they are incarcerated, the women are subjected to routine prisoner counts and are guarded by correctional officers. They cannot leave their beds after 9:30 p.m. unless they are going to the bathroom. Their visitors may come only at prescribed times three days a week. Civilly committed women are also subject to the full range of Department of Correction's ("DOC") disciplinary actions; there is no separate disciplinary code for civilly committed women. Doe Decl. ¶¶ 4-6, 15.

In certain respects, civilly committed women are *more* restricted than other prisoners. They are confined almost exclusively to the "Mod," a modular structure where they are housed with pre-trial detainees in a single room containing 20 bunk beds. Unlike other prisoners, women incarcerated solely because of Section 35 cannot go to another building to receive their medications and eat their meals; both are delivered to the Mod, where the women are required to spend at least 20 hours a day. They cannot walk around the grounds or generally access the recreational equipment at MCI-Framingham. Instead, they are allowed to leave the Mod for only two purposes: four days a week, they can spend some time in the pool table and exercise rooms in the old administration building (known as Old Main); six days a week, they can spend 2.5 hours in a small, fenced-in gravel yard that is surrounded on three sides by black tarps. *See* Doe Decl. ¶¶ 8-16.

3

Beyond the trauma, stigma, and humiliation of these standard prison practices, imprisoning the putative class members contradicts the statutory purpose of Section 35. Women who are civilly committed to MCI-Framingham do not receive any substance abuse treatment or programming. They simply undergo "detoxification," during which the only available medications are acetaminophen, ibuprofen, Immodium and Tums; they cannot receive methadone, Suboxone or Vivitrol.[2] After detoxification, the women are sent to the Mod where they are housed for the duration of their civil commitment at MCI-Framingham. *See* Doe Decl. ¶¶ 7, 15.

## III.   Plaintiff Jane Doe

Jane Doe is presently confined at MCI-Framingham due to a civil commitment under Section 35. *See* Doe Decl. ¶¶ 2-3. The customary conditions and practices with respect to civilly committed women at MCI-Framingham, as described above, have in fact been applied to Ms. Doe. She was handcuffed, shackled, and transported to MCI-Framingham in a police wagon. When she arrived at MCI-Framingham, Ms. Doe was forced to remove all of her clothing and undergo a strip search and a visual examination of her mouth, vagina, and anus. She was then forced to sit on a BOSS chair. All of Ms. Doe's belongings were seized and she was issued a prison uniform. *Id.* ¶¶ 4-6.

Following the intake process, Ms. Doe was sent to the medical unit for detoxification. Although Ms. Doe was undergoing withdrawal from controlled substances—and thus faced potentially serious side effects—she was given only over-the-counter medicines. *Id.* ¶¶ 7.

Following detoxification, Ms. Doe moved to the Mod, where she has been forced to spend the vast majority of her days with access only to playing cards, television, and books. She is subject to prisoner "counts" beginning at 6 a.m. every day, as well as rude treatment by

---

[2] The only exception is pregnant women, who can receive methadone.

correctional officers. Ms. Doe has declined to visit the gravel-lined caged recreation area, which is referred to as the "kennel," because the unshaded space is hot and the correctional officers do not provide civilly committed women with water while they are in the "kennel." *Id.* ¶¶ 9-12.

Ms. Doe has not met with a caseworker or a mental health counselor. Nor has she received substance abuse treatment. *Id.* ¶¶ 13-16.

## PROPOSED CLASS DEFINITION

All women who are now or will be imprisoned at MCI-Framingham based solely on a civil commitment under Massachusetts General Laws Chapter 123, Section 35.

## ARGUMENT

Federal Rule of Civil Procedure 23(a) establishes four "prerequisites" for class certification. If those prerequisites are met, and if the case also falls within one of the "types" of class actions described in Rule 23(b), then the plaintiffs "are entitl[ed] . . . to pursue [their] claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Here, those conditions are satisfied.

## I.      The Proposed Class Satisfies the Four Prerequisites of Rule 23(a).

The four Rule 23(a) prerequisites are known as numerosity, commonality, typicality, and adequacy. First, the class must be "so numerous that joinder of all members is impracticable." Second, there must be "questions of law or fact common to the class." Third, the claims of the representative plaintiffs must be "typical of the claims or defenses of the class." Fourth, those representative plaintiffs must "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(1) to (a)(4).

### A.      Numerosity

The proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Hundreds of women are incarcerated at MCI-Framingham each year, solely as a result of their civil commitment under Section 35.

Although "the requirement is often referred to as numerosity . . . it might more properly be called the impracticability requirement, because the inquiry called for by Rule 23(a)(1) often involves more than merely counting noses." *DeRosa v. Mass Bay Commuter Rail*, 694 F. Supp. 2d 87, 97 (D. Mass. 2010) (internal citations omitted).[3] A high enough number is itself *sufficient* to render joinder impracticable—in the First Circuit, that number is generally 40—but proving a threshold number of class members is never *necessary* for such a finding. *See, e.g.*, *Gordon v. Johnson*, No. 13-cv-30146-MAP, 2014 WL 2120002, at *3-4 (D. Mass. May 21, 2014); *Reid v. Donelan*, 297 F.R.D. 185 (D. Mass. 2014).[4] Instead, courts evaluate the "specific facts of each case," *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980), and can consider numerous factors, including transient membership in the proposed class, to determine "'the difficulty or inconvenience of joining all members of the class.'" *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 173 (D. Mass. 2012) (quoting *Advertising Specialty Nat'l Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956)); *Gordon,* 2014 WL 2120002, at *4.

---

[3] *See also In re Nexium(esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 51-52 (D. Mass. 2013) (citing *Meijer, Inc. v. Warner Chilcott Holdings Co. III*, 246 F.R.D. 293, 306 (D.D.C. 2007), for the proposition that "the test for impracticability of joinder is not simply a test of the number of class members. When the class is large, numbers alone are dispositive, but when the class is small, factors other than numbers are significant") (internal citations and quotation marks omitted).

[4] Courts certify classes smaller than 40 when other factors render joinder impracticable. *See In re Nexium*, 296 F.R.D. at 51-52 (certifying a class of 24 or 29); *In re Prograf Antitrust Litig.,* No. 1:11-cv-10344-RWZ, 2013 WL 2395083, *1 (D. Mass. Apr. 23, 2013) (certifying a class of 25); *In re Citigroup, Inc. Capital Accumulation Plan Litig.,*No. 00cv11912-NG, 2010 WL 9067986, *8-10 (D. Mass. Jan. 6, 2010) (certifying a subclass of 20); *see also Arkansas Ed. Ass'n v. Bd of Ed.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (holding that a 20-person class was sufficiently numerous); *Jackson v. Danberg*, 240 F.R.D. 145 (D. Del. 2007) (certifying a class of 16); *Clarkson v. Coughlin*, 145 F.R.D. 339, 348 (S.D.N.Y. 1993) (certifying a class of 7); *Davy v. Sullivan*, 354 F. Supp. 1320, 132 (D. Ala. 1973) (certifying a class of 10).

Ultimately, the numerosity requirement imposes a "low threshold," *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009), which is relaxed even further "when a party seeks only injunctive and declaratory relief." *Reid*, 297 F.R.D. at 189; *Avery v. Heckler*, 584 F. Supp. 312, 322 n.16 (D. Mass. 1984) (same). Moreover, plaintiffs are not required to identify each present and future class member. "District courts may draw reasonable inferences from the facts presented to find the requisite numerosity." *McCuin v. Sec'y of Health and Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987).

Here, Plaintiff satisfies the numerosity standard both because the number of class members exceeds 40 and, separately, because the transient nature of the proposed class renders joinder impracticable. *Reid*, 297 F.R.D. at 189.

### 1.      The Number of Class Members Renders Joinder Impracticable.

The proposed class satisfies numerosity because the number of women who are *or* will be civilly committed to MCI-Framingham unquestionably exceeds 40. A court evaluating the numerosity of a proposed class seeking injunctive relief may "consider persons who might be injured in the future in the class." *Rancourt v. Concannon*, 207 F.R.D. 14, 15 (D. Me. 2002) (citing 1 Newberg, H. and Conte, A., *Newberg on Class Actions*, § 3:07 (3d ed. 1992)); *see also Gordon*, 2014 WL 212002, at *4 (including future detainees); *Reid*, 297 F.R.D. at 189 (same). In so doing, the court can rely on historical data to help predict future members. *See Green v. Johnson*, 513 F. Supp. 965, 968-69, 975 (D. Mass 1981) (relying in part on annual and monthly data to certify a class of incarcerated juveniles seeking injunctive relief); *Mass Ass'n of Older Americans v. Spirito*, 92 F.R.D. 129, 131 & n.1 (D. Mass. 1981) (relying in part on annual and monthly data to certify a class of Medicaid applicants seeking injunctive relief).

According to the Department of Correction's data, hundreds of women are civilly committed to MCI-Framingham each year: 232 in 2011, 366 in 2012 and 308 in 2013, for a total

of 906 in three years.[5] Although some of these women are incarcerated because they are both civilly committed and criminally charged—known as "dual commitments"—most are "straight civils" incarcerated solely under Section 35. In fiscal year 2012, only about 37.9 percent of civilly committed women had a pending criminal charge. *See* Massachusetts Department of Public Health, "Sec 35 – Civil Commitments: FY 12 – Year End Report," pg 4, Exhibit E. The Commonwealth's own reporting therefore suggests that at least 60 percent of the women civilly committed to MCI-Framingham are incarcerated solely under Section 35. [6]

That percentage suggests that between 2011 and 2013, roughly 540 of the 906 civilly committed women—well over 100 per year—were imprisoned at MCI-Framingham solely under Section 35. This year appears to be no different; Plaintiff's counsel have identified 25 civilly committed women who were held at MCI-Framingham during June 2014, and a recent Department of Correction's report indicates that 62 women were civilly committed to MCI-Framingham in the first quarter of 2014.[7] Thus, in the first three months of 2014 alone, perhaps 37 women (60 percent of 62) were incarcerated solely under Section 35.

What is more, these numbers reflect the relatively continuous arrival of new civilly committed women at MCI-Framingham:

---

[5] *See* Massachusetts Department of Correction, "Quarterly Report on Admissions and Release in the Massachusetts Department of Correction, Fourth Quarter 2012," pg 10, Exhibit B; Massachusetts Department of Correction, "Quarterly Report on Admissions and Release in the Massachusetts Department of Correction, Fourth Quarter 2013," pg 9, Exhibit C.

[6] Sixty percent appears to be a conservative estimate. *See* Declaration of Erika Kates, Exhibit F (attaching a document from Rhianna Kohl, Director of Research and Policy at the Massachusetts Department of Correction, which suggests that straight civils accounted for 74.5 percent (102 out of 137) of all Section 35 commitments to MCI-Framingham between July 2013 and January 2014); Declaration of Sean K. Thompson, Exhibit H (attaching a document from Doug Levine, General Counsel of the Massachusetts Executive Office of Public Safety and Security, which indicates that straight civils accounted for 75.9 percent (145 out of 191) of all Section 35 commitments to MCI-Framingham between July 2013 and March 2014).

[7] *See* Attorneys' Declarations in Support of Plaintiff's Motion for Class Certification and Appointment of Class Counsel, Declaration of Matthew R. Segal, Exhibit G; Massachusetts Department of Correction, "Quarterly Report on Admissions and Release in the Massachusetts Department of Correction, First Quarter 2014," pg 9, Exhibit D.

| Civil Admissions and Releases at MCI Framingham[8] | | |
|---|---|---|
| | **Admitted Women** | **Released Women** |
| **Q1 2011** | 39 | 35 |
| **Q2 2011** | 50 | 48 |
| **Q3 2011** | 90 | 79 |
| **Q4 2011** | 53 | 64 |
| **Q1 2012** | 71 | 65 |
| **Q2 2012** | 97 | 89 |
| **Q3 2012** | 134 | 131 |
| **Q4 2012** | 64 | 79 |
| **Q1 2013** | 79 | 62 |
| **Q2 2013** | 100 | 109 |
| **Q3 2013** | 78 | 93 |
| **Q4 2013** | 51 | 54 |
| **Q1 2014** | 62 | 55 |

If approximately 60 percent of these admitted women are straight civil commitments—as the Commonwealth's own numbers suggest—then between 23 and 80 women each quarter have been incarcerated solely under Section 35.

At a particular moment, of course, MCI-Framingham might hold fewer than 40 "straight civils." If civilly committed women are released shortly after arriving at MCI-Framingham, then fewer women will have overlapping periods of confinement, and snapshots of MCI-Framingham's population will tend to reflect lower numbers. In recent months, the average period of confinement has ranged between 8 and 22 days.[9]

However, particularly because Plaintiff seeks only injunctive and declaratory relief, the numerosity prerequisite does not turn on how long DOC officials *keep* civilly committed women at MCI-Framingham; what matters is that *new* women continue to be incarcerated at MCI-Framingham solely as a result of their civil commitment under Section 35. This "influx of future members will continue to populate the class." *Reid*, 297 F.R.D. at 189; *see Gordon*, 2014 WL 2120002, at *4; *San Antonio Hispanic Police Officer Or v. San Antonio*, 188 F.R.D. 433, 442

---

[8] Compiled from numbers in Exhibits B, C and D.
[9] *See* Declaration of Sean K. Thompson, Exhibit H.

(W.D. Tex 1999) ("The unknown future members should be properly considered and included as a part of the class."). And "[s]ince the number of current and future class members is beyond the forty-person threshold," the class satisfies Rule 23(a)(1). *Reid*, 297 F.R.D. at 189.

2.      *Other Factors Also Render Joinder Impracticable.*

The consistent turnover at MCI-Framingham supplies an independent ground to rule that Rule 23(a)(1) is satisfied. *Gordon*, 2013 WL 2120002, at *4; *Hawker v. Consovoy*, 198 F.R.D. 619, 625 (D.N.J. 2001). "The potential inclusion of these currently uncountable, future class members not only increases the number beyond forty, but also illustrates the transient nature of the proposed class." *Reid*, 297 F.R.D. at 189 (quoting William B. Rubenstein, *Newberg on Class Actions*, § 3.15 (5th ed. 2013), for the proposition that the inclusion of future members "may make class certification more, not less likely"). As other courts have noted, cases involving transient commitment or incarcerated populations are particularly well-suited to class certification because "the inmate population . . . is constantly revolving." *Green*, 513 F. Supp. at 975; *see, e.g.*, *J.D. v. Nagin*, 255 F.R.D. 406, 414 (E.D. La. 2009) (noting that the challenged juvenile detention center could only hold thirty juveniles at one time and concluding "[t]he mere fact that the population of the [detention center] is constantly revolving during the pendency of litigation renders any joinder impracticable").[10] Although the identities change, the harms and claims remain the same.

Here, the admission and release data reveals a highly fluid population of women committed to MCI-Framingham under Section 35. Because this population "is continuously changing shape," *Gordon*, 2014 WL 2120002, at *4, and particularly because the identities of

---

[10] *See also Jackson*, 240 F.R.D. at 147-48 (certifying class of 16 death row inmates where fluid nature of class was constantly adding and deleting class members); *Clarkson v. Coughlin*, 145 F.R.D. 339, 348 (S.D.N.Y. 1993) (certifying subclass of 7 deaf or hearing-impaired female inmates in part because "the composition of the prison population is inherently 'fluid'").

future proposed class members are unpredictable, joinder is "impossible." *Reid*, 297 F.R.D. at 189. As a result, Plaintiff meets the first prerequisite for class certification.

### B.     Commonality

There are also "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists when plaintiffs "demonstrate that the class claims 'depend upon a common contention' and that determining the truth or falsity of that contention 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Connor B., ex rel. Vigurs v. Patrick*, 278 F.R.D. 30, 32 (D. Mass. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). "Even a single common question" is sufficient to satisfy Rule 23(a)(2). *Wal-Mart*, 131 S. Ct. at 2556 (internal quotation marks and citation omitted).

This case presents precisely such issues central to the validity of the putative class's claims: whether the imprisonment of women solely under Section 35 violates their substantive due process rights under the United States and Massachusetts Constitutions because their imprisonment is incompatible with the purpose of in-patient treatment for substance abuse, and a substantial departure from any professional judgment about helping people recover from the disease of addiction;[11] and whether it impermissibly discriminates against them based on their disability.[12]

These central issues are "capable of classwide resolution" in "one stroke." *Id.* at 2551. The proposed class thus "ha[s] common interest in the disposition of the disputed questions of law," *Banner v. Smolenski*, 315 F. Supp. 1076, 1080 (D. Mass. 1970), and this class action will provide "common answers," *Wal-Mart*, 131 S. Ct. at 2551 (citation, internal quotation marks and emphasis omitted).

---

[11] *See* Fourteenth Amendment to the United States Constitution; Articles 1, 10, and 12 of the Massachusetts Declaration of Rights; Part II, Chapter 1, Section 1, Article IV of the Massachusetts Constitution.
[12] *See* Title II of the ADA; Article 114 of the Massachusetts Constitution; M.G.L. ch. 93, § 103.

These central legal issues also arise from a core set of facts common to all class members. Every class member has been or is at imminent risk of suffering the same unlawful imprisonment. And each such imprisonment results from the same policy and practice of Defendants, implemented under Section 35.

Any factual differences among class members cannot defeat this commonality. Plaintiff does not ask the Court to evaluate the propriety of her underlying civil commitments, the likelihood that her substance abuse may result in serious harm, or the specific conditions of her confinement. Rather, she simply challenges the practice of sending civilly-committed women to MCI-Framingham under Section 35, when that practice is so clearly incompatible with the statutory purpose, and so far removed from any professional judgment regarding appropriate treatment for these women. "These questions will, necessarily, be answered similarly for every class member." *Kenneth R. ex rel Tri-County Cap, Inc./GS v. Hassan*, 293 F.R.D. 254, 267 (D.N.H. 2013) (commonality for class of institutionalized mentally ill individuals challenging systemic deficiency in the availability of community-based mental health services). Plaintiff, therefore, satisfies the commonality requirement.

## C.      Typicality

The claims of the proposed class representatives are "typical of the absent class members." *Connor B.*, 272 F.R.D. at 296; see Fed. R. Civ. P. 23(a)(3). Although the "claims of the entire class need not be identical," class representatives "must generally 'possess the same interests and suffer the same injury' as the unnamed class members." *Id.* (quoting *Gen. Tel.*, 457 U.S. at 156). A plaintiff can show typicality by "demonstrating that her injuries arise from the same course of conduct as the rest of the class, and that her claims are based on the same legal theory as those of the class." *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 285 F.R.D.

169, 178 (D. Mass. 2012). This inquiry tends to "merge" with the showing required for commonality. *Gen. Tel.*, 457 U.S. at 157 n.13.

Here, the named Plaintiff and the members of the proposed class are or will be subjected to the same challenged policy and practices. Like all other members of the proposed class, Plaintiff is incarcerated at MCI-Framingham solely because she was civilly committed under Section 35 for alcoholism or substance abuse. Due to this imprisonment, they all have suffered (or will suffer) identical violations of their constitutional and statutory rights. "Because Plaintiff[] ha[s] identified specific systemic failures that expose the entire Plaintiff class to an unreasonable risk of harm, the typicality requirement is satisfied." *Connor B.*, 272 F.R.D. at 296-97.

In turn, Plaintiff seeks relief based on the same legal theories that would provide relief to the rest of the proposed class: injunctive relief and a declaratory judgment that their incarceration at MCI-Framingham pursuant to Section 35 violates their rights to substantive due process and nondiscrimination because it is antithetical to substance abuse treatment, substantially departs from acceptable professional judgment standards, and unlawfully discriminates against them based on their disability. In other words, Plaintiff presents the "same question[s]" as her "fellow class members" and "seek[] the same remedy [] as everyone else." *Reid*, 297 F.R.D. at 191. "No serious objection to typicality can be offered under these circumstances." *Id.*

**D.    Adequacy**

Finally, the proposed class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, plaintiffs must "'first show that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation.'" *Reid*, 297 F.R.D. at 191 (quoting

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)). With respect to class counsel, courts consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g).[13] Courts also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

Here, the interests of the proposed class representative are not "antagonistic to or in conflict with" those of the absent class members. *Connor B.*, 272 F.R.D. at 297. The requested declaratory and injunctive relief will apply equally to, and benefit all, class members. And Plaintiff is not seeking damages or any other limited resource that could yield conflicts. Because "every member is seeking the same remedy . . . based on an identical theory", Plaintiff's "interests are coextensive with the class." *Reid*, 297 F.R.D. at 191.

Moreover, Ms. Doe has retained experienced and competent counsel who will fairly and adequately protect the interests of the proposed class. Plaintiff is represented by the Center for Public Representation ("CPR"), Prisoners' Legal Services ("PLS"), the American Civil Liberties Union Foundation of Massachusetts ("ACLUM"), and the law firm Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"). CPR, PLS, and ACLUM have litigated many complex civil rights class actions, including many challenging the clients' detention in, or the conditions of, prisons. *See, e.g.*, *Haverty v. Commissioner of Correction*, 440 Mass. 1 (2003); *Souza v. Sheriff of Bristol County*, 455 Mass. 573 (2010); *Rosie D. v. Patrick*, 593 F. Supp. 2d 325 (D. Mass.

---

[13]Although these requirements appear in Rule 23(g), which addresses class counsel appointment, the Advisory Committee instructed that they should "guide the court in assessing proposed class counsel as part of the certification decision." Notes of Advisory Committee on Rules, 2003 Amendments, Subdivision (g); *see Gordon*, 2014 WL 2120002, at *6 & n.4.

2009); *Gordon*, 2014 WL 2120002. *See* Attorney Declarations in Support of Plaintiff's Motion

for Class Certification and Appointment of Class Counsel, Exhibit G. WilmerHale is a leading

law firm with substantial experience litigating class actions on a *pro bono* basis. *See, e.g.*, *Reid*,

286 F.R.D. 168; *Rosie D.*, 593 F. Supp. 2d at 327 (noting, in CPR and WilmerHale's successful

class action on behalf of Medicaid recipients, that "the level of professionalism exhibited by

Plaintiffs' counsel at every stage has been unsurpassed by any the court has seen"); *see also*

Exhibit G.

Plaintiff's counsel have already invested substantial time and resources in this case. For

example, before bringing suit, Plaintiff's counsel made multiple visits to MCI-Framingham. *See*

*id.* These efforts and others, together with the willingness of Plaintiff's counsel "to fund all costs

of this litigation through trial," ensure that members of the proposed class will be adequately

represented. *Connor B.*, 272 F.R.D. at 297; *see also* Exhibit G

## II.      The Proposed Class Meets the Requirements of Rule 23(b)(2).

Plaintiff also meets at least one of the requirements of Rule 23(b). Specifically, she

satisfies Rule 23(b)(2), which permits class certification when the adverse party "has acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole."

"The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory

remedy warranted—the notion that the conduct is such that it can be enjoined or declared

unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 131 S. Ct. at 2557

(internal quotation marks omitted); *see also Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir.

1972). This feature of Rule 23(b)(2) certification makes it "uniquely suited to civil rights

actions," *Connor B.*, 272 F.R.D. at 297 (quoting *Yaffe*, 454 F.2d at 1366), particularly with

respect to injunctive requests challenging civil commitments or prison conditions. *See Rolland v.*

15

*Patrick*, Civ. A. No. 9830208-KPN, 2008 WL 4104488, at *6 (D. Mass. Aug. 19, 2008). Courts

routinely certify Rule 26(b)(2) class actions within these contexts. *See, e.g.*, *id.*; *Smith v. Ashe*,

106 F.R.D. 353, 354-55 (D. Mass. 1985) (certifying a (b)(2) class challenging the conditions of

confinement and medical treatment for prisoners segregated from the general population).[14]

Rule 23(b)(2) certification is similarly appropriate here. Defendants have acted on

grounds that apply generally to the class: they have imprisoned (or will imprison) women

committed solely under Section 35, and thereby violated these women's substantive due process

and statutory rights because their imprisonment is incompatible with the purpose of in-patient

treatment for substance abuse, and a substantial departure from any professional judgment about

helping people recover from the disease of addiction.

Rule 23(b)(2) is also appropriate because Plaintiffs seeks declaratory and injunctive relief

that "would benefit the entire class." *Connor B.*, 272 F.R.D. at 297. Because this "single

injunction and declaratory judgment . . . will provide relief to the entire class," the class "satisfies

Rule 23(b). *Gordon*, 2014 WL 2120002, at *6.

Additionally, the civilly committed population at MCI-Framingham is constantly

changing. Because the average length of stay for civilly committed women can be quite short,

*see* Exhibits B, C, D, & F, a woman who seeks only declaratory or injunctive relief faces the risk

that any individual claim she files will quickly become moot. That circumstance is a particularly

strong reason to grant certification under Rule 23(b)(2). *See Guckenberger v. Boston University*,

957 F. Supp. 306, 326-27 (D. Mass. 1997) (certifying a Rule 23(b)(2) class where "the danger of

---

[14] *See also Kenneth R.*, 293 F.R.D. at 270-271 (certifying a (b)(2) class challenging institutionalization of people with serious mental illness); *Karsjens v. Jesson*¸ 283 F.R.D. 514, 416, 520 (D. Minn. 2012) (certifying a (b)(2) class challenging lack of treatment and conditions of confinement for civilly committed sex offenders); *Rakes v. Coleman*, 318 F. Supp. 181, 185, 189-90 (E.D. Va. 1970) (certifying a (b)(2) class challenging civilly committing alcoholics to "regular penal institutions" without providing "effective rehabilitative facilities").

mootness [was] great enough to necessitate class certification"). Indeed, Rule 23(b)(2) is designed for just this type of case.

**III.     In the Alternative, the Court Should Order Class Discovery.**

Because the facts set forth above make clear that class certification is proper, there is no need for class discovery. However, if the Court believes that the present record is not adequate to determine whether a class should be certified, Plaintiff respectfully requests that the Court order class discovery. *See Yaffe*, 454 F.2d at 1367. Defendants possess extensive information about the members of the proposed class, limited discovery with respect to which would further demonstrate that class certification is proper.

**CONCLUSION**

Plaintiff respectfully requests that this Court certify a class of all women who are now or will in the future be imprisoned at MCI-Framingham based solely on a civil commitment under Massachusetts General Laws Chapter 123 Section 35. The class satisfies the prerequisites of Rule 23(a) and meets the requirements of Rule 23(b) because defendants have acted or refused to act on grounds that apply generally to the class. The Court should also appoint the undersigned counsel as class counsel under Federal Rule of Civil Procedure 23(g). If the Court does not now certify a class, it should order class discovery.

Dated: June 30, 2014                          Respectfully submitted,


                                              /s/ William F. Lee
                                              William F. Lee (BBO# 291960)
                                              Lisa J. Pirozzolo (BBO# 561922)
                                              Sean K. Thompson (BBO# 624880)
                                              WILMER CUTLER PICKERING
                                               HALE AND DORR, LLP
                                              60 State Street
                                              Boston, MA  02109
                                              Telephone:  617-526-6000
                                              Facsimile:  617-526-5000
                                              william.lee@wilmerhale.com
                                              lisa.pirozzolo@wilmerhale.com
                                              sean.thompson@wilmerhale.com


                                              Matthew R. Segal (BBO# 654489)|
                                              Jessie J. Rossman (BBO# 670685)
                                              AMERICAN CIVIL LIBERTIES UNION
                                               FOUNDATION OF MASSACHUSETTS
                                              211 Congress Street, 3rd Floor
                                              Boston, MA  02110
                                              Telephone:  617-482-3170
                                              Facsimile:  617-451-0009
                                              msegal@aclum.org.
                                              jrossman@aclum.org

Robert D. Fleischner (BBO# 171320)A
Samuel R. Miller (BBO# 624969)
(*pro hac vice application forthcoming*)
Center For Public Representation
22 Green Street
Northampton, MA  01060
Telephone:  413-586-6024
Facsimile:  413-586-5711
rfleischner@cpr-ma.org
smiller@cpr-ma.org


James R. Pingeon (BBO# 541852)
Bonita P. Tenneriello (BBO# 662132)
Prisoners' Legal Services
10 Winthrop Square, 3rd Floor
Boston, MA  02110
Telephone:  617-482-2773
Facsimile:  617-451-6383
jpingeon@plsma.org
btenneriello@plsma.org

*Attorneys for Plaintiff Jane Doe*

19

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon each party below by mail on June 30, 2014.

Deval L. Patrick
Governor of the Commonwealth of Massachusetts
Massachusetts State House
Office of the Governor
Room 105
Boston, Massachusetts 02133

Massachusetts Department of Correction
DOC Central Headquarters
50 Maple Street
Suite 3
Milford, Massachusetts 01757

Luis S. Spencer
DOC Central Headquarters
50 Maple Street
Suite 3
Milford, Massachusetts 01757

Lynn Bissonnette
MCI-Framingham
99 Loring Drive
P.O. Box 9007
Framingham, Massachusetts 01701

/s/ William F. Lee

William F. Lee